**In re POST–NEWSWEEK STATIONS, MICHIGAN, INC.; Storer Broadcasting Company; American Broadcasting Companies, Inc.; and Detroit Free Press, Inc., Petitioners.**

No. 83–1694.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 13, 1983.

Decided Dec. 13, 1983.

Richard E. Rassel, James E. Stewart, Detroit, Mich., for Detroit News.

Leonard R. Gilman, U.S. Atty., Maura D. Corrigan, Asst. U.S. Atty., argued, Detroit, Mich., for U.S.

Peter J. Kelley, Ann Arbor, Mich., for Coleman A. Young.

Neil H. Fink, Detroit, Mich., for Beckman, Bowers, Ferantino, Cusenza and Valentini.

Donald .Pailen, Abigail Elias, Detroit, Mich., for City of Detroit.

David Griem, argued, Detroit, Mich., for Carson.

John J. Ronayne, III, argued, Chester E. Kasiborski, Detroit, Mich., for appellant.

Before ENGEL, MARTIN and WELL-FORD, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

In this emergency appeal, heard on October 13, 1983, the petitioners sought a writ of mandamus compelling either a decision from the district court on their application for immediate access to inspect and copy audio- and videotapes admitted into evidence or used in an ongoing criminal trial, or a stay in the criminal proceedings until a decision was rendered. In the alternative, the media petitioners requested an order granting them contemporaneous access to inspect and copy the audio- and videotapes. In an oral decision from the bench, this court denied the media's petition for a writ of mandamus and refused to issue an order granting them contemporaneous access to the tapes.

The underlying criminal prosecution in this case accuses an official of the City of Detroit and four others of conspiring to defraud the City of Detroit. Prior to the start of the trial, it was public knowledge that the government was planning to rely on audio- and videotapes in its presentation to the jury. On August 17, 1983, the district court heard defense motions to suppress the tape recordings. Although present in the courtroom, the press did not present the district court with an application to copy the tape recordings.

The trial began on September 26, 1983. Arrangements were made to guarantee the press unfettered access to the trial. Front-row seats were reserved for the press; the tapes were played in a manner which permitted public viewing; and all evidentiary rulings were made in open court. The media petitioners first intervened to challenge the closure of jury voir dire. Initially, the voir dire had been conducted in chambers because of excessive pretrial publicity. The defendants, however, withdrew their request to close the voir dire, and the process was moved to the jury room which permitted public viewing. Inexplicably, questions during voir dire did not address the possibility of jury sequestration, despite the extensive pretrial media attention surrounding the case. On September 29, a jury was impaneled.

Testimony in the case began on October 3. On October 5, the district court adjourned the proceedings until October 11 to consider several evidentiary issues. Throughout this time the district court received no formal application from the media for access to the tapes, even though on October 3 it had decided that certain portions of the tapes would be admitted into evidence.[1]

On October 7, the district court received the petitioners' formal application for contemporaneous access to the tapes admitted into evidence or used in the trial. On the same day, arguments were heard on the petitioners' application. Realizing that a hurried determination on the petitioners' application might prejudice the fair-trial rights of the defendants, while at the same time recognizing the importance of the petitioners' claim, the district court decided that additional time was needed to consider the petitioners' application. Unaware that each of the defendants had joined in replying to the petitioners' application, the court collectively granted all the defendants ten days to respond. It is clear, however, that the district court did not rule on the merits of the petitioners' claim of immediate access.

In their brief the petitioners argue they have a right to contemporaneously inspect and copy the documentary and non-documentary evidence admitted in the proceedings below. They assert that any delay in acting on their claim violates their constitutional and common law rights of access to judicial records.

The district court, on the other hand, states in its response filed in this court that,

1. Sometime during the first week in October, counsel for the government notified the court during an in chambers conference that it had received an informal request from the press for access to the tapes. Because the court had received no formal application from the press, it declined to consider the matter.

prior to the petitioner's October 7 application, it never considered the issue of contemporaneous access to the tapes. The district court faults the petitioners' lack of timeliness in presenting their application. The district court notes that because it was unaware of the petitioners' desire for contemporaneous access, it did not consider the possibility of sequestering the jury. Now, it contends, sequestration is impossible because the trial is expected to be quite lengthy and the jurors were not warned that they might be sequestered. The district court states the "emotional and financial cost of ... a lengthy sequestration is unjustified."

The district court also contends that contemporaneous access is inappropriate because "the history of this case [indicates] that a copying of the tapes would transform this already highly publicized trial into an entertaining carnival." The court states that the "defendants' right to a fair trial would be seriously jeopardized if the tapes were made available to the media at the same time that they were introduced into trial." In its view, cautionary instructions to an unsequestered jury would be insufficient to protect the defendants' constitutional right to a fair trial.

In an oral decision from the bench, this court denied the petitioners' request for a writ of mandamus and refused to issue an order granting them immediate access to the tapes in question. We did not, however, reach the merits of petitioners' constitutional and common law claims because we found the controversy between the petitioners and the district court insufficiently developed to merit adjudication.

■ It is settled doctrine that we do not render advisory opinions. *United States v. Fruehauf*, 365 U.S. 146, 81 S.Ct. 547, 5 L.Ed.2d 746 (1961). Questions of law "which remain unfocused because they are not pressed before the [c]ourt with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaced situation embracing conflicting and de-

manding interests" are inappropriate for judicial decision-making. *Id.* at 157, 81 S.Ct. at 554. Furthermore, in constitutional jurisprudence it is particularly important to avoid making decisions in cases not ripe for adjudication. *Globe Newspaper Co. v. Superior Court, etc.*, 457 U.S. 596, 102 S.Ct. 2613, 2628, 73 L.Ed.2d 248 (1982) (Stevens, J., dissenting); *Cf. United States v. Raines*, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960).

28 U.S.C. § 1291 gives this court the authority to hear "appeals from all *final* decisions of the district courts." (emphasis added) "The effect of the statute is to disallow appeal from a decision which is tentative, informal or incomplete. Appeal gives the [court of appeals] a power of review, not one of intervention. So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal." *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949); *Southern Methodist Univ. Ass'n v. Wynne & Jaffe*, 599 F.2d 707, 711 (5th Cir.1979). At the time this court heard oral argument in this case, it was presented with a controversy which was open and inconclusive. The district court had issued no order or determination either granting or denying the petitioners' application for contemporaneous access to the tapes. The only determination made by the district court was its decision to allow the defendants in the underlying criminal prosecution ten additional days to respond to the petitioners' application for immediate access. This was not a final order appealable under 28 U.S.C. § 1291. *Cohen, supra,* 337 U.S. at 546, 69 S.Ct. at 1225 (statute does not permit appeals, even from fully consummated decisions, where they are but steps towards final judgment in which they will emerge).

■ Nor was this a case suitable for application of the collateral order doctrine. The requirements of this doctrine are: (1) that the matter appealed from must have been finally determined by the district court; (2) that the matter must be separable from, and collateral to rights asserted in the action and neither affect nor be affect-

ed by decision on the merits; and (3) that the rights asserted would be lost, probably irreparably, if review were delayed until the conclusion of proceedings in the district court. *In Re General Motors Corp. Engine Interchange Lit.,* 594 F.2d 1106, 1118–19 (7th Cir.1979) *cert. denied* 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95. As noted, because no decision had been issued by the district court on the petitioners' application, the first requirement of the collateral order doctrine was not satisfied. Nor were the petitioners in a position below where a ten-day delay on their application would cause irreparable injury to their asserted rights. *In Re Application National Broadcasting Co., (United States v. Myers),* 635 F.2d 942, 945 (2d Cir.1980). The public and press has been guaranteed full access to the content of the audio and videotapes in question. The media petitioners have had, and will have, an unfettered opportunity to see and hear the tapes as they are played for the jury. This is not a case where the district court has indirectly "curtail[ed] access to the content of public records nor in any way limit[ed] the news reporting of that content." *Id.* at 944. While we recognize the importance of the rights asserted by the petitioners, *See In Re Knoxville News-Sentinel Co.,* 723 F.2d 470 (6th Cir.1983); *Brown & Williamson v. FTC,* 710 F.2d 1165 (6th Cir.1983), we also understand that the district court's final decision on the question of contemporaneous access involves a balancing of the public's presumptive right of access against the defendants' constitutional right to a fair trial. *United States v. Edwards,* 672 F.2d 1289, 1294 (7th Cir.1982); *In Re Application of National Broadcasting Co., Inc., (United States v. Criden I),* 648 F.2d 814, 827 (3d Cir.1981). Thus, it would have been inappropriate for us to intervene in ordering the immediate release of the tapes in question before the district court had an opportunity to definitively rule on the petitioners' application for contemporaneous access.

■ Similarly, this was not a case warranting a writ of mandamus. The "traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority *when it is its duty to do so.*" *Roche v. Evaporated Milk Ass'n.,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943), *quoted in Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 661, 98 S.Ct. 2552, 2556, 57 L.Ed.2d 504 (1978) (plurality opinion) (emphasis added). The party seeking the writ has the "burden of showing that its right to issuance of the writ is 'clear and indisputable.' " *Bankers Life & Cas. Co. v. Holland,* 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953); *Will v. Calvert Fire Ins. Co., supra,* 437 U.S. at 662, 98 S.Ct. at 2557. *See also* 52 Am.Jur.2d *Mandamus* § 78 (1970) ("Mandamus will not lie to control the discretion of a court or judicial officer, or to compel its exercise in a particular manner, except in those rare instances when under the facts it can be legally exercised in but one way.") At the time we heard oral argument, it could not be stated that the petitioners had a clear and indisputable right of immediate access to the tapes. Nor could it be held that the district court's decision to delay its determination of the petitioners' application constituted a clear abuse of discretion or usurpation of judicial power. *In Re Sessions,* 672 F.2d 564, 566 (5th Cir.1982). The district court was in the midst of a highly publicized trial when it was confronted with the press' request for immediate access to the tapes. Aware of the political controversy surrounding the trial, and the press' indirect involvement in that controversy, the district court felt compelled to afford the defendants adequate time to respond to the press' claim. In light of the circumstances before it, the district court acted quite reasonably in delaying its decision on the petitioners' application for contemporaneous access. *See Associated Press v. United States District Court,* 705 F.2d 1143, 1147–50 (9th Cir.1983) (Poole, J., specially concurring).

For these reasons, we denied the petitioners' request for a writ of mandamus, and denied their request for an order granting

them contemporaneous access to the tapes admitted into evidence or used in the underlying criminal prosecution. We emphasize that this opinion does not in any manner whatsoever address the merits of the petitioners' claim.