**In re BENDECTIN PRODUCTS LIABILITY LITIGATION,**
**Petitioner.**

**No. 84–3710.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 23, 1984.

Decided Oct. 26, 1984.

Rehearing and Rehearing En Banc
Denied Dec. 14, 1984.

Irving R.M. Panzer (argued), Washington, D.C., Barry J. Nace, Bethesda, Md., for appellant.

Stanley M. Chesley, Cincinnati, Ohio, for respondent.

Frank C. Woodside, III (argued) (Merrell-Dow), Dinsmore & Shohl, Cincinnati, Ohio, for appellee.

James G. Butler (Class), Raymond L. Henke, Butler, Jefferson, Dan & Allis, Los Angeles, Cal., for petitioner.

James G. Butler (Marco Cordova), Butler, Jefferson, Dan & Allis, Los Angeles, Cal., Richard H. Middleton, Jr., N. Calhoun Anderson, Jr., Middleton & Anderson P.C., Savannah, Ga., Gene E. Smith, Sherman Oaks, Cal., Leonard W. Schroeter, Schroeter, Goldmark & Bender, Seattle, Wash., Thomas H. Bleakley, Robert A. Tyler, Detroit, Mich., George S. Alfieris, Sherman Oaks, Cal., Stephen B. Murray, New Orleans, La., Barry Regar, Barry Regar, A Professional Law Corp., Palm Springs, Cal., Richard Warren Mithoff, Tommy Jacks, Doggett & Jacks, Houston, Tex., Elaine Mittleman, Falls Church, Va., Mari C. Bush, Boulder, Colo., Marceline Lasater, Gibbins, Burrow & Bratton, Austin, Tex., W. Russell Van Camp, Van Camp, Bennion & Kelleher, Spokane, Wash., Don L. Dees, Tulsa, Okl., Gary O. Galiher, Stanford H. Masui, L. Richard DeRobertis, Honolulu, Hawaii, John M. Anton, Rodney A. Klein, Inc., A Professional Corporation, Sacramento, Cal., for parties in support of petition for writ of mandamus.

Arthur H. Bryant, Trial Lawyers for Public Justice, P.C., Washington, D.C., Herbert B. Newberg, Herbert B. Newberg, P.C., Philadelphia, Pa., for amicus curiae Trial Lawyers for Public Justice.

Before KEITH and MARTIN, Circuit Judges, and JOHNSTONE, District Judge.[*]

BOYCE F. MARTIN, Jr., Circuit Judge.

Petitioners seek a writ of mandamus ordering the district court to vacate its order certifying a class action pursuant to Federal Rule of Civil Procedure 23(b)(1). 102 F.R.D. 239 (S.D.Ohio 1984). For the reasons stated below, the petition shall be granted, and the writ shall be issued.

### I.

This case is just one stage in a massive products liability lawsuit against Merrell Dow Pharmaceuticals, Inc., the manufacturer of the drug Bendectin. Bendectin is a prescription drug developed to relieve

---

[*] Honorable Edward H. Johnstone, United States District Court for the Western District of Kentucky, sitting by designation.

morning sickness in pregnant women.[1] Numerous plaintiffs have filed claims in both federal and state court alleging that they suffer from birth defects as a result of their in utero exposure to Bendectin.

The present controversy has its roots in a transfer order of the Judicial Panel on Multidistrict Litigation in early 1982. 533 F.Supp. 489. Pursuant to that order, all Bendectin actions pending in federal courts were transferred to the Southern District of Ohio for consolidated pretrial proceedings. Shortly after the transfer, a five-person Plaintiffs' Lead Counsel Committee was formed to coordinate discovery efforts for all plaintiffs in federal court.

Over the next year, many other cases were transferred to the Southern District of Ohio, and many more cases were filed in that court as original actions.[2] In September 1983, the district judge issued an order to show cause why the cases should not be certified as a class action under Federal Rule of Civil Procedure 23 or, in the alternative, be consolidated for trial on common issues of liability pursuant to Federal Rule of Civil Procedure 42. After the parties responded to this order, the district judge held in November 1983 that the action was not appropriate for class certification and instead consolidated the cases for trial pursuant to Rule 42. The consolidation order, however, only included those cases that had been filed in Ohio federal courts, and the cases that had been transferred to the Southern District were to be returned to

their original venue for trial unless the plaintiffs agreed to the consolidated trial.

The consolidated trial began June 11, 1984, and a jury was impaneled. Because of serious settlement negotiations between the Plaintiffs' Lead Counsel Committee and Merrell Dow, the district court recessed the trial on June 18 and certified a class for settlement purposes under Federal Rule of Civil Procedure 23(b). Merrell Dow has apparently made a settlement offer of $120 million, and a majority of the Plaintiffs' Lead Counsel Committee tentatively favor the settlement offer.[3] A hearing is scheduled for October 31, 1984, to determine the proper allocation of the settlement among subclasses, and a fairness hearing on the settlement is scheduled for November 30.

In the order certifying the class, the district judge found that all four requirements of Rule 23(a) were easily met. The court also found that the requirements of Rule 23(b)(1)(A) and (B) were met.[4] With respect to Rule 23(b)(1)(A), the district court stated that "continued case by case determinations will inevitably result in varying adjudications which will impose inconsistent standards of conduct upon the defendant." The district judge found 23(b)(1)(B) to have been met because "there is a risk that a limited fund may exist from which judgments can be satisfied." The district judge then certified a "non-opt out" class for settlement purposes of all persons exposed to Bendectin.

The district judge also subdivided the class into Subclasses A and B. Subclass A

---

1. In 1983, Merrell Dow ceased the production and marketing of Bendectin.

2. In his order certifying a class, the district judge stated that over five hundred lawsuits concerning Bendectin were pending in the Southern District of Ohio.

3. Two of the members of the Plaintiffs' Lead Counsel Committee oppose the settlement, and one of these dissenting members appeared at argument in favor of the writ of mandamus.

4. Federal Rule of Civil Procedure 23(b) states in pertinent part:

(b) An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests ....

consists of all persons who had filed suit prior to the class certification order. Subclass B encompasses all persons who had not filed suit by that date.

Shortly after the certification order, several of the individual plaintiffs filed a petition with this Court for a writ of mandamus to vacate the district court's certification order. After the filing of the petition, a substantial number of plaintiffs has joined in the petition for the writ. Merrell Dow and a majority of the Plaintiffs' Lead Counsel Committee are opposing the petition for mandamus.

## II.

■ This Court clearly has the power to issue a writ of mandamus pursuant to the All Writs Statute, 28 U.S.C. § 1651. *EEOC v. K-Mart Corp.,* 694 F.2d 1055, 1061 (6th Cir.1982); *United States v. Harper,* 729 F.2d 1216, 1221 (9th Cir.1984). The petitioners, however, bear a heavy burden in showing that mandamus is the proper remedy. Mandamus is an extraordinary remedy, *Kerr v. United States District Court for the Northern District of California,* 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976), and it will only be granted when the petitioner shows that "its right to issuance of the writ is 'clear and indisputable.'" *In re Post-Newsweek Stations, Michigan, Inc.,* 722 F.2d 325, 329 (6th Cir.1983) (quoting *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953)). "[O]nly exceptional circumstances amount-

ing to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967).[5]

While recognizing that the Supreme Court has admonished the circuit courts to issue writs of mandamus only in the most extraordinary circumstances, we believe that this admonition is only "a starting point in the effort to develop a specific framework which can assist when practical applications of the generalities is required." *Bauman v. United States District Court,* 557 F.2d 650, 654 (9th Cir. 1977). Unfortunately, this Court has not defined such a framework because we have not been faced with a case that has called for a detailed examination of the writ. The Ninth Circuit, however, in an illuminating opinion, has identified the appropriate guidelines for the issuance of the writ in the class certification context. *Bauman,* 557 F.2d 650.[6] Because we find the analysis of *Bauman* to be very persuasive, we shall apply it to the case at hand.

■ In *Bauman* the plaintiff in a class action proceeding sought a writ of mandamus to modify the district judge's order certifying a class under Rule 23(b)(2). In considering the petition, the Ninth Circuit outlined five guidelines, which it had distilled from the case law,[7] to help decide if the issuance of the writ was proper. They are:

**5.** The petitioners argue that the district judge wrongfully extended his power by forcing them into a "non-opt out" class that is impermissible under Federal Rule of Civil Procedure 23. As we will discuss, the district court's application of Rule 23 was erroneous. The difficulty, however, is in distinguishing between errors that are merely reversible and not subject to mandamus, *Will v. United States,* 389 U.S. 90, 98 n. 6, 88 S.Ct. 269, 275 n. 6, 19 L.Ed.2d 305 (1967), and those errors that are of such gravity that mandamus is proper. We believe that the five-part framework that we adopt is the best method to make such a distinction.

**6.** For recent applications of the *Bauman* analysis, *see United States v. Harper,* 729 F.2d 1216, 1221 (9th Cir.1984); *In re Cement Antitrust Liti-*

*gation* (MDL No. 296), 688 F.2d 1297, 1301 (9th Cir.1982), *aff'd sub nom. Arizona v. United States District Court for the District of Arizona,* 459 U.S. 1191, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983).

**7.** The guidelines outlined in *Bauman* are based on an extensive review of applicable Supreme Court precedent and Ninth Circuit case law. Although the Supreme Court has considered the proper use of the writ of mandamus on two occasions since *Bauman, Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980); *Will v. Calvert Fire Insurance Co.,* 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978), neither of those cases suggest that the guidelines utilized in *Bauman* are no longer appropriate.

(1) The party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired.

(2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first).

(3) The district court's order is clearly erroneous as a matter of law.

(4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules.

(5) The district court's order raises new and important problems, or issues of law of first impression.

*Bauman,* 557 F.2d at 654–55 (citations omitted).

As the *Bauman* court recognized, however, "the guidelines are cumulative and may not all point to the same conclusion." *In re Cement Antitrust Litigation (MDL No. 296),* 688 F.2d 1297, 1301 (9th Cir.1982), *aff'd sub nom. Arizona v. United States District Court for the District of Arizona,* 459 U.S. 1191, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983). "Rarely if ever will a case arise where all the guidelines point in the same direction or even where each guideline is relevant or applicable." *Bauman,* 557 F.2d at 655. In many cases, "a proper disposition will often require a balancing of conflicting factors." *Id.*

With regard to the first guideline, the petitioners clearly cannot challenge the certification by direct appeal. This Court has already rejected a direct appeal of the certifying order in this case. *Schreier v. Merrell Dow Pharmaceutical, Inc.,* 745 F.2d 58 (6th Cir.1984). The opposition to the petition argues, however, that the plaintiffs can challenge the certification order by appealing the settlement, if it is approved by the district court. As we shall discuss

next, the petitioners would be prejudiced by having to wait for such an appeal, and therefore such an appeal is an inadequate remedy.

The petitioners in this case clearly would be prejudiced by having to wait for an appeal from a settlement order. If this class certification is allowed, these plaintiffs would have to expend time and resources contesting a settlement offer that is being forced on them by Merrell Dow and the majority of the Plaintiffs' Lead Counsel Committee. Many of these plaintiffs have spent a considerable amount of their resources preparing for trial, and now that their trials are at hand, they would be forced to direct their attention to a settlement offer which they feel is totally inadequate.

Moreover, the subdivision of the class will greatly prejudice a number of the plaintiffs. Many of the current plaintiffs and prospective plaintiffs have retained counsel who are familiar with the Bendectin litigation, and thus several counsel are representing more than one plaintiff. Counsel whose clients fall in both Subclass A and Subclass B cannot possibly represent both classes as the classes are inherently in conflict with each other for their share of the settlement.[8] If this certification is permitted, many plaintiffs who wish to challenge the settlement will have to retain counsel who may be unfamiliar with their cases.

Finally, several of the plaintiffs may be prejudiced by the stay of state discovery proceedings that accompanied the certification order. This stay, in conjunction with the uncertainty caused by the certification, has delayed state proceedings, and at least one plaintiff may lose his claim as a result.[9]

---

**8.** Because the size of Subclass B cannot be presently determined, members of Subclass A have the incentive to try to minimize the size of Subclass B in order to increase Subclass A's share of the settlement.

**9.** This plaintiff filed suit against Merrell Dow in California state court on August 14, 1979. Under California law, the case must be brought to trial within five years from the date of the filing

of the complaint or the case is dismissed. Cal Civ.Proc.Code § 583. The plaintiff was able to get an extension of the five-year rule until December 9, 1984, but unless a trial begins by that date, the plaintiff's claim may be lost. The delays caused by this class certification order may therefore cause this plaintiff to lose his claim.

The next guideline is whether the district court's order is clearly erroneous as a matter of law. The petitioners claim that certification is erroneous because a certification for settlement purposes only is not allowable, because the four requirements of Rule 23(a) are not met, and because Rule 23(b)(1) is not satisfied. We find that the district judge's determinations as to Rule 23(b)(1) are clearly erroneous, and we therefore do not address the other issues.[10]

■ Rule 23(b)(1)(A) provides that class actions are maintainable if a separate action would create a risk of "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." The fact that some plaintiffs may be successful in their suits against a defendant while others may not is clearly not a ground for invoking Rule 23(b)(1)(A). *McDonnell Douglas Corp. v. United States District Court for the Central District of California*, 523 F.2d 1083, 1086 (9th Cir.1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976); *In re "Agent Orange" Product Liability Litigation*, 100 F.R.D. 718, 724–25 (E.D.N.Y.1983), *petition for mandamus denied sub nom. In re Diamond Shamrock Chemicals Co.*, 725 F.2d 858 (2d Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 1417, 79 L.Ed.2d 743 (1984). The class certification in this case therefore cannot stand on this ground.

The district judge, however, apparently did not rely solely on the possibility of varying adjudications because he also cited *Hernandez v. Motor Vessel Skyward*, 61 F.R.D. 558 (S.D.Fla.1973), *aff'd mem.*, 507 F.2d 1278 (5th Cir.1975), to support his conclusion as to Rule 23(b)(1)(A). In *Hernandez*, the district judge certified a class under Rule 23(b)(1)(A) on the ground that the doctrine of collateral estoppel might bind the defendant on issues of liability if any plaintiff were to win a suit against it. Irrespective of the merits of this argument as a ground for Rule 23(b)(1)(A) certification, this concern has been eliminated by the Supreme Court's curtailment of the use of offensive collateral estoppel in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).[11] The district court therefore failed to establish any grounds for certification under Rule 23(b)(1)(A).[12]

■ With respect to Rule 23(b)(1)(B), the district judge stated that there was a limited fund from which the plaintiffs could be compensated for their claims and therefore adjudications by earlier plaintiffs could "as a practical matter be dispositive of the interests of the other members [of the class] not parties to the adjudications." Fed.R.Civ.P. 23(b)(1)(B). This limited fund theory has been endorsed by several courts. *In re Northern District of California, Dalkon Shield IUD Product Liability Litigation*, 693 F.2d 847, 851 (9th Cir.1982), *cert. denied*, 459 U.S. 1171, 103 S.Ct. 817, 74

---

**10.** We do note that there is precedent for the proposition that a class can be certified for settlement purposes only. *See, e.g., In re Beef Industry Antitrust Litigation*, 607 F.2d 167 (5th Cir.1979), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405 (1981). *The Beef Industry* case involved the certification of a temporary settlement class prior to certification of a class for trial. In this case, the district judge certified a class for settlement purposes after having rejected the same class for trial purposes. The district judge therefore implicitly held that the standards for certifying a class are different depending on whether the class is for settlement or whether it is for trial. Because we decide the case on other grounds, we do not consider whether this holding is correct.

**11.** In *Parklane Hosiery*, the Supreme Court explicitly stated that offensive collateral estoppel

could not be used in mass tort litigation. *Parklane Hosiery*, 439 U.S. at 330 & n. 14, 99 S.Ct. at 651 & n. 14.

**12.** *Parklane Hosiery* also explains why the opposition to the writ's reliance on *Union Light, Heat and Power Co. v. United States District Court*, 588 F.2d 543 (6th Cir.1978), *cert. dismissed*, 443 U.S. 913, 99 S.Ct. 3103, 61 L.Ed.2d 877 (1979), is misplaced. In *Union Light*, this Court refused to issue a writ of mandamus to vacate a class certification that relied in part on *Hernandez*. Because the law as to offensive collateral estoppel was unsettled at that time and therefore *Hernandez* was questionably good law, the certification in that case was not clearly erroneous as to Rule 23(b)(1)(A).

L.Ed.2d 1015 (1983); *In re "Agent Orange" Product Liability Litigation*, 100 F.R.D. at 725. *See also* Fed.R.Civ.P. 23 advisory committee note to 1966 amendments. The district court was therefore not clearly erroneous as a matter of law to hold that a limited fund is a justification for a class action under a Rule 23(b)(1)(B).

■ The district court, however, was clearly erroneous as a matter of law in the method it used to determine that there was a limited fund. The certification order states without support "that there is a risk that a limited fund may exist from which judgments can be satisfied." No findings were made on the record as to this conclusion, and the petitioners in this case were given no opportunity to dispute whether there was a limited fund.[13]

In deciding whether a limited fund would subvert the rights of some plaintiffs, the courts have differed over whether the proponent of the class certification must show that a limited fund will "necessarily" affect the plaintiffs' claims, *Dalkon Shield IUD Product Liability Litigation*, 693 F.2d at 852, or whether a "substantial probability" will suffice. *In re "Agent Orange" Product Liability Litigation*, 100 F.R.D. at 726. Irrespective of the proper test, the district court, as a matter of law, must have a fact-finding inquiry on this question and allow the opponents of class certification to present evidence that a limited fund does not exist.[14] *Dalkon Shield IUD Product Liability Litigation*, 693 F.2d at 852. *See also In re "Agent Orange" Liability Litigation*, 100 F.R.D. at 727. Because the

district judge in this case failed to make any such finding, the certification was clearly erroneous as a matter of law.[15]

The fourth consideration of *Bauman* is whether the district court's order is an oft-repeated error or manifests a persistent disregard of the federal rules. Of the five guidelines, this is the least applicable to this case. This is clearly not a case where the district judge is persistently disregarding the federal rules. This error is also not an oft-repeated one because, fortunately, mass tort litigation does not frequently occur. For two reasons, however, the absence of this factor does not mean that a writ of mandamus is inappropriate.

First, as was discussed above, the *Bauman* court recognized that all the guidelines do not have to point in the same direction for the issuance of the writ to be proper.[16] *Bauman*, 557 F.2d at 650. In support of this statement, the Ninth Circuit pointed to *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335 (9th Cir.1976), a case in which the Ninth Circuit issued a writ of mandamus to vacate a class certification under Rule 23(b)(1) although there was no evidence that the district court had made an oft-repeated error. In a case such as this, where all of the other guidelines overwhelmingly support the propriety of the writ, we do not believe that the absence of this factor is controlling.

Second, we feel that this guideline is not as crucial to the resolution of the case as are the other guidelines. The Supreme Court has approved the use of the writ to review unusual and important procedural

---

**13.** If this case were on appeal, the proper remedy would be to remand the case for a finding in this regard. Because the case is before us on a petition for a writ of mandamus, our only recourse is to issue the writ.

**14.** If the district court had made a factual finding on this issue, a writ of mandamus would not be the proper remedy. Factual errors cannot justify the issuance of the writ.

**15.** For these reasons, the case is distinguishable from *Union Light, Heat and Power Co. v. United States District Court*, 588 F.2d 543 (6th Cir. 1978), *cert. dismissed*, 443 U.S. 913, 99 S.Ct. 3103, 61 L.Ed.2d 877 (1979). *See supra* n. 12. In that case, the district judge at least made

some finding on the record as to the amount of possible claims and the net worth of the company. *Coburn v. 4-R Corp.*, 77 F.R.D., 43, 45 (E.D.Ky.1977), *petition for mandamus denied sub nom. Union Light, Heat and Power Co. v. United States District Court*, 588 F.2d 543 (6th Cir.1978), *cert. dismissed*, 443 U.S. 913, 99 S.Ct. 3103, 61 L.Ed.2d 877 (1979).

**16.** In fact, the fourth and fifth guidelines can seldom be consistent with each other. A district court decision that presents issues of first impression rarely will also involve an oft-repeated error.

questions, *Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964), and the Fifth Circuit has concluded that the writ can be used as a "one-time only device to settle new and important problems that might have otherwise evaded expeditious review." *In re EEOC,* 709 F.2d 392, 394 (5th Cir.1983). *See generally* 16 C. Wright, A. Miller, E. Cooper, & E. Gressman, *Federal Practice & Procedure* § 3934, at 235 (1977) (arguing that the courts should not distinguish between persistent errors and important novel questions in their use of mandamus). Because the issues presented in this case are new and very important, as we will discuss in connection with the next guideline, we believe that mandamus can be appropriate even though a recurring problem is not involved.[17]

The final guideline is whether the district court's order raises issues of first impression and creates new and important problems. Several of the issues raised by the class certification are of first impression in this Circuit. This Court has never been faced with a non-opt out class certification for settlement purposes only. Moreover, the sheer magnitude of the case makes the disposition of these issues crucial as several hundred litigants are waiting for a decision before proceeding with their cases.

■ Based on these guidelines, we find that the issuance of a writ of mandamus is appropriate in this case. Although we shall issue the writ, we realize that the district judge has been faced with some very difficult problems in this case, and we certainly do not fault him for attempting to use this unique and innovative certification method. On pure policy grounds, the district judge's decision may be commendable, and several commentators have argued that Rule 23 should be used in this manner. *See, e.g.,* Note, Class Certification of Mass Accident Cases under Rule 23(b)(1), 96 *Harv.L.Rev.* 1143 (1983). Because of the situation presented by this case, however,

we conclude that a writ of mandamus vacating the certification order of the district court should be issued.

So ordered.

---

17. We do note, however, that the district judge in this case has been faced with a similar problem on a prior occasion. In *Coburn v. 4–R* *Corp.,* 77 F.R.D. 43 (E.D.Ky.1977), the district judge certified a class under Rule 23(b)(1) in a mass tort lawsuit. *See supra* nn. 12 & 14.