**In re KING WORLD PRODUCTIONS, INC., Charles Lachman and Inside Edition, Inc., Petitioners.**

**No. 90–1122.**

United States Court of Appeals, Sixth Circuit.

Submitted Jan. 26, 1990.

Decided Jan. 29, 1990.

Michael H. Siegler, Cincinnati, Ohio, Russell Smith, Frankfurt, Garbus, Klein & Selz, New York City, for petitioners.

Timothy M. Mucciante, Russell Ethridge, Moll, Desenberg & Bayer, Detroit Mich., for respondent.

## ORDER

Before MARTIN and RYAN, Circuit Judges; and BROWN, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

King World Productions, Inc., Charles Lachman and Inside Edition Inc., petition for a writ of mandamus requiring the district court in Detroit to vacate its January 18, 1990 temporary restraining order enjoining them from broadcasting a videotape of the plaintiff, Stuart M. Berger, M.D., engaging in alleged medical malpractice. They also seek mandamus requiring the district court to transfer this dispute to the Southern District of New York.

Dr. Berger, a New York resident, has a national reputation for his diet program and medical practice. His diet program and medical methods have stirred great national interest, but also widespread criticism. He has appeared on numerous radio and television talk shows and has been the subject of several articles questioning his methods and claims. *See, e.g., "Take 50 of These, Fork Over Some Cash and Call Me in the Morning,"* Spy, March 1989, at 58. Dr. Berger is currently under investigation by the New York State Department of Health, Office of Professional Medical Conduct for engaging in alleged unethical and fraudulent conduct. This investigation has been documented by several news organizations, including ABC News and the Wall Street Journal.

Inside Edition Inc. is a New York corporation which produces and broadcasts a nationally-syndicated news program of the same name. Inside Edition is owned by King World Productions, Inc., also a New York corporation.

In their investigation of Dr. Berger's medical practice, Inside Edition sent one of its producers to infiltrate Dr. Berger's New York office. That producer, claiming to be

a patient, surreptitiously videotaped Dr. Berger engaging in what is claimed to be medical malpractice and unethical behavior. Inside Edition informed Dr. Berger that they intended to broadcast the videotape as part of a report on his medical practice.

Consequently, Dr. Berger filed an action against the defendants in United States District Court for the Eastern District of Michigan alleging that the defendants' investigative techniques violated 18 U.S.C. § 2511, which prohibits tortious or criminal interception and disclosure of wire communications or oral communications, that defendants invaded his privacy, that the defendants committed fraud by misrepresenting their purpose in visiting Dr. Berger's office, and that defendants committed a trespass against Dr. Berger. Dr. Berger claimed that he would be irreparably harmed by the broadcast of the video footage and requested that the defendants be enjoined from broadcasting or otherwise using the information recorded on those tapes.

Following a hearing on January 18, 1990, the district court issued a temporary restraining order enjoining the defendants from broadcasting the video footage filmed in Berger's office on a national program scheduled for January 22, 1990. Rejecting the first amendment argument, the basis of the court's order was that the defendants' activities were in violation of federal anti-wiretap law and New York tort law. The defendants immediately sought from us a writ of mandamus. They argued that the temporary restraining order constituted a prior restraint of the defendants' first amendment rights. They also sought a change of venue.

We first consider the procedural aspects of Inside Edition's attempt to obtain relief from the temporary restraining order.

■ Generally, "appellate review should be postponed until after final judgment has been rendered by the trial court." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980). However, we certainly are empowered to issue writs of mandamus to review certain rulings prior to a final judgment.

28 U.S.C. § 1651; *In re: Bendectin Products Liability Litigation*, 749 F.2d 300, 303 (6th Cir.1984). Because of Congress' judgment that appellate review should generally be postponed until a final judgment is rendered, and to avoid a docket logjam from piecemeal litigation, "[a] judicial readiness to issue the writ of mandamus in anything less than an extraordinary situation would run the real risk of defeating the very policies sought to be furthered by [the] judgment of Congress [that appellate review should follow final judgments]." *Kerr v. United States District Court for the Northern District of California*, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976).

■ The traditional use of the writ of mandamus has been to confine a lower court to lawfully exercise its prescribed jurisdiction or compel it to exercise its authority when it is its duty to so act. *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185 (1943); *see* 28 U.S.C. § 1651. There must be a demonstration of a clear abuse of discretion or conduct amounting to usurpation of judicial power in order to grant such a writ. *Mallard v. United States District Court for the Southern District of Iowa*, — U.S. —, —, 109 S.Ct. 1814, 1822, 104 L.Ed.2d 318, 331 (1989). Moreover, there must be a demonstration of a lack of adequate alternative means to obtain the relief they seek and that the right to the issuance of the writ is clear and indisputable. *Id.*

We have clearly stated that these directions are only a starting point. *In re: Bendectin*, 749 F.2d at 303. The framework for determining whether the "extraordinary situation" required for mandamus exists has been squarely resolved. We stated in *In re: Bendectin, supra*, 749 F.2d at 304, that our standard for a mandamus petition would be:

1) The party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired.

2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first).

3) The district court's order is clearly erroneous as a matter of law.

4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules.

5) The district court's order raises new and important problems, or issues of law of the first impression.

Not all of the guidelines will point in the same direction, thus a balancing of the guidelines is required. *Id.* Likewise, "the absence of [a] factor is not controlling" where the other guidelines clearly support the propriety of issuing the writ. *Id.* at 306.

■ As to the first guideline, Inside Edition cannot challenge the temporary restraining order on direct appeal. Under Rule 65 of the Federal Rules of Civil Procedure, a temporary restraining order can be issued upon a petitioner's showing of irreparable injury if an activity is not enjoined. The order is in effect for a maximum of ten days, and shall expire on its own terms, unless the court extends it for up to ten more days. Fed.R.Civ.P. 65(b). The party who obtained the temporary restraining order shall proceed with an application for a preliminary injunction. *Id.* If that party fails to apply for the preliminary injunction, the court shall dissolve the temporary restraining order. *Id.* The issuance of a temporary restraining order necessarily halts some activity prior to other proceedings in the district court regarding that activity. A temporary restraining order is not a final appealable order and in the context of a first amendment prior restraint, a direct appeal after the conclusion of the proceedings in the district court would be meaningless. Indeed, mandamus is the only vehicle for obtaining appellate review of an improperly issued temporary restraining order when the first amendment runs afoul of a conflicting right and prior restraint may result. *See C.B.S. v. U.S. District Court for the Central District of California,* 729 F.2d 1174, 1177 (9th Cir.1983). As to the second factor, because the purpose of the first amendment press freedom clause is to allow the dissemination of information, good or bad, right or wrong, even minimal interference with first amendment freedoms causes an irreparable injury. *See, e.g., Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559, 96 S.Ct. 2791, 2803, 49 L.Ed.2d 683 (1976); *Elrod v. Burns,* 427 U.S. 347, 373–74, 96 S.Ct. 2673, 2689–90, 49 L.Ed.2d 547 (1976).

We do not believe that the fourth guideline applies to this case.

■ We now consider whether the district court's order was clearly erroneous as a matter of first amendment law. In granting the temporary restraining order, the district court relied on our recent consideration of 18 U.S.C. § 2511, the federal anti-wiretap statute, in *Stockler v. Garratt,* 893 F.2d 856 (6th Cir.1990). In *Stockler,* we held that the liability provisions in § 2511 applied even if the wrongfully obtained recording is never actually used for a criminal or tortious purpose. Here, the district court essentially ruled that a carefully pled violation of § 2511 trumped the defendants' first amendment right to broadcast their surreptitiously obtained video footage. The district court stated, "[T]he First Amendment is just not interested in protecting the news media from calculated misdeeds." Nothing in the *Stockler* decision or the statute itself allows a complaint alleging a violation of § 2511 or an actual violation of § 2511 to supercede the press's exercise of their first amendment rights. While § 2511 proscribes certain conduct, it in no way provides for a prior restraint of the press in their exercise of first amendment rights even if the press's conduct clearly violates § 2511. Thus, the fifth guideline favors the defendants' petition for the writ.

Without a doubt, the district court's temporary restraining order constitutes a prior restraint of the use of the video footage obtained in Dr. Berger's office. Protection of the right to information that appeals to the public at large and which is disseminated by the media is the cornerstone of the free press clause of the first amendment. No matter how inappropriate the acquisition, or its correctness, the right to disseminate that information is what the Constitution intended to protect. Consequently,

**60**

even prior restraint of the dissemination of national security information has been denied. *New York Times v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) (the Pentagon Papers case). Any prior restraint bears "a heavy presumption against its constitutional validity." *New York Times Co. v. United States,* 403 U.S. at 714, 91 S.Ct. at 2141 (quoting *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70 n. 10, 83 S.Ct. 631, 639 n. 10, 9 L.Ed.2d 584 (1963)). The temporary nature of the district court's order does not relax this presumption because "a prior restraint, by ... definition, has an immediate and irreversible sanction." *Nebraska Press Ass'n. v. Stuart,* 427 U.S. 539, 559, 96 S.Ct. 2791, 2803, 49 L.Ed.2d 683 (1976). In order to support the temporary restraining order, Dr. Berger must show that he will suffer an irreparable harm great enough to justify a prior restraint in the face of this stringent standard.

Dr. Berger contends, and the district court agreed, that he will have great difficulty proving damages if Inside Edition is allowed to broadcast the videotape. We fail to see how the broadcast of the video footage will hamper Dr. Berger's ability to prove the alleged torts or the alleged violation of § 2511. While he may be embarrassed by the broadcast, Dr. Berger has simply failed to show the type of irreparable harm or injury that would tip the scale toward justifying a prior restraint of Inside Edition's first amendment freedoms to broadcast the video tapes.

Thus, in view of the applicable first amendment law, Inside Edition has demonstrated a clear abuse of discretion and a clear and indisputable right to the issuance of the writ. The district court is directed to vacate its temporary restraining order enjoining the defendant's broadcast of their videotape of Dr. Berger. In conclusion, we note that our grant of this writ of mandamus is not intended to constitute an approval of the surreptitious means used to gather this information about Dr. Berger, and in no way affects Dr. Berger's ability to seek redress under New York state tort law and 18 U.S.C. § 2511. We do not, however, nibble away at first amendment

rights. The petitioner's request for a writ of mandamus to compel transfer of the pending action to the United States District Court for the Southern District of New York is denied in order to afford the district court below an opportunity to rule on the matter.

It is so ordered.