Lauriat, Peter M., J.
In this fourteen-year-old class action, plaintiffs Lori Aspinall and Thomas Geanacopoulos, on behalf of themselves and all others similarly situated (the “plaintiffs”), have now moved for partial summary judgment against defendants Philip Morris USA (“Philip Morris”) and Altria Group, Inc. (“Altria”) (collectively, the “defendants”). The plaintiffs urge the court to apply the doctrine of non-mutual offensive collateral estoppel to establish, as a matter of law, that the defendants are liable under G.L.c. 93A. For the following reasons, the plaintiffs’ motion is denied.
BACKGROUND
The court need not repeat the factual and procedural backdrop to this action, which is fully set forth in Aspinall v. Philip Morris Cos., Inc., 442 Mass. 381 (2004), Aspinall v. Philip Morris, Inc., 453 Mass 431 (2009), and this court’s previous decisions. See, e.g., Memorandum of Decision and Order on Defendants’ Motion for Leave to Take Absent Class Discovery, 20 Mass. L. Rptr. 303, 2005 WL3629358 (Mass.Super.Ct. November 22, 2005) (Lauriat, J.); Memorandum of Decision and Order on (1) Defendant Philip Morris USA Inc.’s Motion for Summary Judgment: Federal Preemption and Mass. Gen. Laws c. 93A, §3, and (2) Plaintiffs’ Motion for Summary Judgment Dismissing Defendants’ Federal Preemption and Mass. Gen. Laws Ch. 93A, §3 Defenses, 2006 WL 4968277 (Mass.Super.Ct. August 10, 2006) (Lauriat, J.).
In brief, and for the purposes of this motion, the record before the court establishes the following largely undisputed facts. The plaintiffs brought this action in 1998 for damages arising from the alleged *172 deceptive marketing of Marlboro Light cigarettes by Philip Morris as “light” cigarettes that deliver “lowered tar and nicotine.” The plaintiffs contend that, since 1971, while the descriptor “Lights” and the words “LOWERED TAR AND NICOTINE” appeared on every pack of Marlboro Lights sold in Massachusetts, the defendants knew that most smokers were likely to receive as much or more tar and nicotine from Marlboro Lights as they would from regular Marlboros. Aspinall, 442 Mass. at 385-86. By labeling their cigarettes “Marlboro Lights,” and branding them “LOWERED TAR AND NICOTINE,” the defendants intended to create an impression in the minds of customers that the cigarettes were “healthier” than regular cigarettes. Id. at 388. They thus promoted the illusion of decreased tar and nicotine deliveries, all the while fully aware that Marlboro Lights would continue to deliver those chemicals at addictive levels. Id.
In 1999, the federal government filed an action against nine cigarette companies, including Philip Morris and Altria, and two tobacco trade organizations, under the Racketeer Influenced and Corrupt Organizations Act (“RICO”), 18 U.S.C. §§1961-1968. United States of America et al. v. Philip Morris et al., 449 F.Sup.2d 1 (D.D.C. 2006), affirmed in part and vacated in part, 566 F.3d 1095 (D.C.Cir. 2009), petition for rehearing en banc denied (Sept. 22, 2009) (the “DOJ Action”). After over two years of discovery and a bench trial that lasted nine months, the United States Court for the District of Columbia issued a 1,653-page decision with over 4,000 findings of fact.
The court found that the defendants had falsely and fraudulently denied (1) that smoking causes lung cancer and chronic obstructive pulmonary disease; (2) that environmental tobacco smoke causes lung cancer and endangers the respiratory systems of children; (3) that nicotine is a highly addictive drug that the defendants manipulated in order to sustain addiction; (4) that they marketed and promoted low tar/light cigarettes as less harmful when in fact they were not; (5) that they intentionally marketed to young people under the age of twenty-one and denied doing so; and (6) that they concealed scientific evidence, destroyed documents, and abused the attorney-client privilege to prevent the public from knowing about the dangers of smoking. The court concluded that “overwhelming” evidence, easily meeting the clear and convincing standard of proof, demonstrated that Philip Morris had committed fraud. Id. at 888. The court held that the tobacco companies, including Philip Morris, had violated RICO; it ordered injunctive and other corrective relief. Id. at 937-45.
The plaintiffs now urge this court to apply non-mutual offensive collateral estoppel, often called issue preclusion, to over two hundred of the district court’s findings. The defendants respond that the application of offensive collateral estoppel would be unfair and, in any event, the plaintiffs cannot establish the traditional elements of collateral estoppel.
DISCUSSION
Summary judgment will be granted where the record establishes that no genuine issues of material fact exist, and that the moving party is entitled to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). “The moving parly must establish that there are no genuine issues of material fact, and that the nonmoving party has no reasonable expectation of proving an essential element of its case.” Miller v. Mooney, 431 Mass. 57, 60 (2000). See also Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
The plaintiffs, relying on Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979) (“Parklane Hosiery”), argue that due process requires that every litigant be afforded only one full and fair opportunity to try its case. They take the position that the issues presented here are identical to those actually litigated in the DOJ Action; that there was a valid and binding final judgment in that action; and that the determination that is presented here, that the defendants’ conduct was fraudulent, was essential to the judgment in the DOJ Action. They argue that the application of collateral estoppel is fair where (1) they could not have joined in the DOJ Action; (2) the defendants had every opportunity and incentive to litigate that action vigorously; (3) there are no procedural safeguards or opportunities available to the defendant here that were not available in the DOJ Action; and (4) the DOJ Action is not inconsistent with previous judgments in favor of Philip Morris.
Philip Morris, also relying on Parklane Hosiery, responds first that the application of offensive collateral estoppel is unfair and inappropriate because the judgment in the DOJ Action is inconsistent with other decisions in its favor. See Parklane Hosiery, 437 U.S. at 330. In addition, it contends that the plaintiffs cannot establish the requirements of collateral estoppel because the issues actually litigated in the DOJ Action were not identical to those in this case, and the DOJ findings were not necessary to that judgment.[1] Finally, it asserts that new scientific evidence undermines the findings in the DOJ Action.
Altria joins Philip Morris’s arguments, and makes three additional points. First, it contends that the finding in the DOJ Action that Altria was in control of Philip Morris was not affirmed on appeal. It next argues that none of the findings for which the plaintiffs seek collateral estoppel against Altria were necessary to the judgment against Altria. Finally, it argues that those findings specific to Altria are not identical to the issues in this case in that they do not relate to light or low tar cigarettes or were not directed at consumers; they thus cannot be the basis for a violation of G.L.c. 93A.
“Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial *173 economy by preventing needless litigation.” Parklane Hosiery, 436 U.S. at 328, citing Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 328-29.[2] Collateral estoppel bars the relitigation of an issue when: “(1) the issue is identical to one in a prior adjudication; (2) there was a final judgment on the merits in the prior proceeding; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue . . . Collateral estoppel applies to issues actually litigated, determined by, and essential to a previous judgment.” Curtis v. Altria Group, 792 N.W.2d 836, 853 (Minn. 2010). The party asserting collateral estoppel bears the burden of proof. Hoult v. Hoult, 157 F.3d 29, 31-32 (1st Cir. 1998).
Under the doctrine of offensive collateral estoppel, which the District of Columbia Circuit described as “detailed, difficult, and potentially dangerous,” a defendant is precluded from relitigating identical issues that the defendant litigated and lost against another plaintiff. Jack Faucett Assocs. v. American Tel & Tel., 744 F.2d 118, 124 (D.C.Cir. 1984). Where offensive collateral estoppel is involved, “[flaimess to the defendant... is a critical finding necessary for the application of offensive estoppel.” Id. at 125. In Parklane Hosiery, the United States Supreme Court concluded that “(a]llowing offensive collateral estoppel may also be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant.” Parklane Hosiery, 439 U.S. at 330.[3],[4] See also Univac Dental Co. v. Dentsply Int’l Inc., 702 F.Sup.2d 465, 489-90 (M.D.Pa. 2009) (“[i]n contrast to defensive collateral estoppel, where the predominant question is whether the basic requirements of issue preclusion are satisfied, the application of non-mutual offensive collateral estoppel presents a unique potential for unfairness”). Rather than prohibit the doctrine altogether, the Court in Parklane Hosiery decided that whether to allow offensive collateral estoppel should be left to the sound discretion of the trial court. Parklane Hosiery, 439 U.S. at 331. See also Achieved-Garcia v. Monroig, 351 F.3d 547, 574-75 (1st Cir. 2003).[5] As the Third Circuit noted, “doubts about its application should usually be resolved against its use.” Witkowski v. Welch, 173 F.3d 192, 206 (3rd Cir. 1999).
Applying the above principles to this case, the court concludes that the application of offensive collateral estoppel would result in fundamental unfairness to the defendants.[6] While, according to Philip Morris, multiple cases involving individual smokers have resulted in defense verdicts that run counter to the court’s conclusions in the DOJ Action, at least two federal court decisions have specifically involved claims of deceptive and fraudulent conduct.[7]
In the first, Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc., No. 98 CV 3287 (E.D.N.Y.), plaintiffs were insurers seeking to recover medical expenses incurred indirectly by providing insurance to smokers. They alleged that light cigarettes lacked significant health benefits over conventional cigarettes because smokers of light cigarettes tended to smoke more, inhale more deeply and hold the smoke in their lungs longer. Evidence adduced at trial demonstrated that the defendants had fraudulently promoted filtered and low-tar as safer and healthier than conventional cigarettes. A jury found that the plaintiff had not proven its direct claim under RICO against Philip Morris.[8]
The second, Iron Workers Local 17 Ins. Fund v. Philip Morris, No. 1:97-CV-01-1422 (N.D. Ohio), was a class action of union trust funds seeking to recover medical costs paid on behalf of smokers. The plaintiffs alleged, inter alia, that tobacco companies engaged in fraudulent misrepresentations with respect to the health risks of low tar cigarettes. The jury found for the defendants on the plaintiffs’ claim under Ohio’s Corrupt Activity Act.[9]
The plaintiffs, relying on Grisham v. Philip Morris, Inc., 670 F.Sup.2d 1014 (C.D.Cal.), argue that Blue Cross and Iron Workers are not inconsistent verdicts because the claims were brought by third-party fiduciaries suing derivatively on behalf of their beneficiaries. Grisham, 670 F.Sup.2d at 1034. As to Blue Cross, the Grisham court concluded that “to the extent that the jury decided anything, the jury decided that the defendants engaged in fraudulent behavior that violated state fraud laws.” Id. at 1034. As to Iron Workers, the Grisham court concluded that, given the jury instructions, it was unclear whether the juiy decided that the defendants did not engage in fraudulent conduct, and the verdict was not inconsistent with that in the DOJ Action. Id. at 1035. The court concluded that “no previous case appears to include an ultimate finding of fact absolving tobacco companies of liability on the basis that they did not engage in fraudulent activities." Id. Emphasis in the original.
This court is not persuaded. That Blue Cross and Iron Workers involved claims asserted by third-party fiduciaries does not negate the verdicts in those cases finding that the defendants, including Philip Morris, did not engage in the same fraudulent conduct under RICO that was asserted in the DOJ Action. The judgments in both Blue Cross and Iron Workers are inconsistent with the judgment in the DOJ Action for purposes of offensive collateral estoppel.
Courts in other jurisdictions have reached the same conclusion. In Curtis v. Altria Group, Inc., the District Court of Minnesota declined to apply offensive collateral estoppel, noting that both Blue Cross and Iron Workers were judgments inconsistent with the judgment in the DOJ Action. 2009 WL 5820516, slip op. (Minn.Dist.Ct. October 14, 2009). Similarly, in City of St. Louis v. American Tobacco Co., No. 22982-09652-01, slip op. (Mo.Cir.Ct. June 2, 2010), the court stated that “apart from countless individual smoker cases that have resulted in defense verdicts that run counter to the DOJ conclusions, [Blue Cross and Iron Workers] *174 . . . resulted in jury verdict outcomes that are directly opposite of the outcome in the court-tried DOJ case.” The court, citing fairness considerations, refused to apply offensive collateral estoppel to the plaintiffs’ claims. See also Craft v. Phillip Morris Cos., Inc., No. 002-00406-02, slip op. (Mo.Cir.Ct. December 28, 2010) (same).
The United States District Court for the Eastern District of New York also declined to apply offensive collateral estoppel to claims similar to those in this case on the grounds, inter alia, of prior judgments inconsistent with the conclusions in the DOJ Action. Schwab v. Philip Morris USA, Inc., 449 F.Sup.2d 992, 1079 (E.D.N.Y. 2006), rev’d on other grounds sub. nom. McLaughlin v. American Tobacco Co., 522 F.3d 215 (2d Cir. 2008). Citing the Restatement (Second) of Judgments §15 cmt. c, the court, without elaboration, stated that the “defendants have won so many of the tobacco cases that applying the rule of the Restatement according conclusive effect to the last of a series of litigations is inappropriate.”[10]
“Collateral estoppel is, in part, a reflection of confidence in the determination of a prior action. Where another court reaches an inconsistent determination, the confidence in the primary case is undermined.” Offensive Collateral Estoppel in Asbestos Litigation: Hardy v. Johns-Manville Sales Corp., 15 Conn.L.J. 247, 265 (1983). See also Restatement (Second) of Judgments §29 cmt. f, at 295. Given that at least two juries have come to a different conclusion on the same issues under the same statute as did the court in the DOJ Action, this court concludes that unfairness to the defendants cuts sharply against the application of offensive collateral estoppel here.
Furthermore, one of the fundamental principles underlying the application of collateral estoppel, the conservation of judicial resources, would not be advanced were the court to allow the plaintiffs’ motion. Even if liability was established under c. 93A, the court would still have to try the issue of damages. This is made more complicated here, because the question of whether to assess damages to each individual smoker as opposed to the class is yet to be determined.
Finally, even if the court were to apply issue preclusion against Philip Morris, there remains a question as to whether it may be used against Altria. To apply issue preclusion to one defendant and not to another would hardly conserve judicial resources and would likely confuse the jury. See In re Light Cigarette Marketing Sales Practices Litig., 691 F.Sup.2d 239, 251 (D.Maine 2010), citing Schwab, 449 F.Sup.2d at 1079. The court, in the sound exercise of its discretion, concludes that offensive collateral estoppel is unfair and inappropriate in the circumstances of this case.
ORDER
For the forgoing reasons, the Motion for Partial Summary Judgment of Plaintiffs Lori Aspinall and Thomas Geanacopoulos on Behalf of Themselves and All Others Similarly Situated against Defendants Philip Morris USA, Inc. and Altria Group is DENIED.

 The defendants do not, and indeed cannot, argue that they did not have a full and fair opportunity to litigate the issue in the DOJ Action, or that there are procedural safeguards and opportunities available in this action that were not available in the DOJ Action.

 The parties agree that federal law governs this issue.

 The Court also noted that offensive collateral estoppel does not promote judicial economy in the same manner as does defensive collateral estoppel.

 Additional policy concerns raised by the Court include (1) offensive collateral estoppel does not necessarily promote judicial economy; (2) if the defendant in the first action is sued for small or nominal damages, it may have little incentive to defend vigorously, particularly if future suits are not foreseeable; and (3) offensive collateral estoppel maybe unfair where the second action “affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result.” Parklane Hosiery, 439 U.S. 330-31. In allowing collateral estoppel, the “presence or absence of a jury as fact finder is basically neutral.” Id. at 332 n. 19.

 The application of offensive collateral estoppel seems especially problematic in cases involving mass torts. In that regard the Court in Parklane Hosiery, citing Currie, Mutuality of Estoppel: Limits of the Bernhard Doctrine, 9 Stan.L.Rev. 281 (1957), stated “In Professor Currie’s familiar example, a railroad collision injures 50 passengers all of whom bring separate actions against the railroad. After the railroad wins the first 25 suits, a plaintiff wins in suit 26. Professor Currie argues that offensive use of collateral estoppel should not be applied so as to allow plaintiffs 27 through 50 automatically to recover.”). Parklane Hosiery, 439 U.S. at 331 n.14. The Sixth Circuit interpreted footnote 14 to explicitly prohibit the application of offensive collateral estoppel in mass tort litigation. In re Bendectin Products Liab. Litig., 749 F.2d 300, 305 n.11 (6th Cir. 1984). See also Hardy v. Johns-Manville Sales Corp., 681 F.2d 334, 346 n.13 (5th Cir. 1982) (“the injustice of applying collateral estoppel in cases involving mass torts is especially obvious”).

 Given this court’s conclusion, it need not address the defendants’ arguments with respect to whether the plaintiffs can satisfy the traditional elements of collateral estoppel, as well as those arguments specific to Altria.

 In Appendix A, the defendants list 21 defense verdicts in favor of Philip Morris. Of those, eleven involved allegations regarding low tar and light cigarettes. The plaintiffs respond that those cases are inapplicable for a variety of reasons. Given this court’s conclusion, however, and its broad discretion in declining to apply offensive collateral estoppel, it need not address the parties’ arguments in this regard.

 As both parties acknowledge, the jury also found for Philip Morris on the plaintiffs’ state law claim. However, the verdict was overturned on appeal because the plaintiff did not have standing to sue derivatively on behalf of its customers.

 Ohio’s Corrupt Activities Act is adopted from RICO. Universal Coach, Inc. v. New York City Trans. Auth., Inc., 90 OhioApp.3d 284, 291 (1993).

 As the plaintiffs point out, the Schwab court also noted that, because one defendant in Schwab was a prevailing party in the DOJ Action, collateral estoppel could not be applied against it, and application of offensive collateral estoppel to all but one of the many defendants would confuse the jury. Nonetheless, the court in Schwab exercised its discretion based on three factors, including that judicial resources would not be conserved by the application of the doctrine. Jury confusion, therefore, was but one factor in the court’s decision.