The MIDLAND MUTUAL LIFE
INSURANCE COMPANY,
Petitioner,

v.

The Honorable Barbara J. SELLERS,
Judge, United States Bankruptcy Court,
Southern District of Ohio, Eastern Division, Respondent.

Bankruptcy No. C–2–89–0522.

United States District Court,
S.D. Ohio, E.D.

June 23, 1989.

John M. Adams, William M. Todd, Jack R. Pigman, Scott E. North, Randall W. Knutti, Teri G. Rasmussen, Polly J. Harris, Porter, Wright, Morris & Arthur, Prof. Howard P. Fink, The Ohio State University College of Law, Columbus, Ohio, for petitioners The Midland Mut. Life Ins. Co., AmeriFirst Bank, and Comerica Bank.

John M. Newman, Jr., David G. Heiman, John W. Zeiger, Jones, Day, Reavis & Po-gue, Columbus, Ohio, for intervenor-respondents Cardinal Industries, Inc. and Cardinal Industries of Florida, Inc.

Russell A. Kelm, Daniel R. Swetnam, John A. Gleason: Schwartz, Kelm, Warren & Rubenstein, Columbus, Ohio, for intervenor-respondent Buckeye Federal Sav. & Loan Ass'n.

Leon Friedberg, Benesch, Friedlander, Coplan & Aronoff, Columbus, Ohio, Stuart Hirshfield, John F. Collins, Lori L. Jones, Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for intervenor-respondent Official Committee of Unsecured Creditors of Cardinal Industries, Inc.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter comes before the Court to consider the petition of The Midland Mutual Life Insurance Company ("Mutual") for a writ of mandamus against the Honorable Barbara J. Sellers who is a judge of the United States Bankruptcy Court for the Southern District of Ohio. The Court has the authority to consider the petition pursuant to 28 U.S.C. § 1651 (1982).

Cardinal Industries, Inc. and Cardinal Industries of Florida, Inc. ("Cardinal") manufacture standardized modular housing units for use in various structures, such as apartments, motels, retirement villages, and single-family residences. Cardinal, along with several wholly-owned subsidiaries, is a vertically integrated business which plans, builds, and manages such structures. On May 15, 1989, the two Cardinal corporations filed petitions under Chapter 11 of the Bankruptcy Code. Cardinal continues to operate its businesses as a debtor-in-possession.

Cardinal or one of its affiliates serves as general partner in approximately 1000 limited partnerships. These partnerships hold title to the real property for the projects developed under its direction. Given Cardinal's desire to reorganize, it seeks to enjoin creditors from foreclosing upon the real property held by the partnerships. It hopes that injunctive relief would permit it to marshall its assets and the partnerships'

real property, in an effort to undertake an integrated plan of reorganization. In order to gain such relief, Cardinal filed on May 23, 1989, an adversary proceeding against a putative defendant class for relief pursuant to the automatic stay and ancillary equitable relief provisions. 11 U.S.C. §§ 105(a), 362(a) (1982 & Supp. IV 1986). The two named defendants were Buckeye Federal Savings and Loan Association ("Buckeye") and AmeriFirst Bank ("AmeriFirst").

In the action, Cardinal seeks a declaratory judgment that the section 362(a)(2) stay applies to all actions against the partnerships and the titles they hold, the violations of which the court may prohibit under section 105(a). In the alternative, Cardinal seeks an injunction under section 105(a) against actions of putative class members against the partnerships by expanding the scope of the automatic stay.

On May 23, 1989, Cardinal filed a motion for a temporary restraining order, temporarily certifying a defendant class and restraining the class from pursuing actions against the partnerships or their property. The bankruptcy court held a hearing on the motion the following day. Cardinal, one of two putative representatives, and non-party putative class members argued before the court.

On May 25, 1989 the court declined to certify a class, citing concerns over the breadth of the proposed class, but issued a temporary restraining order to bar actions against the partnerships or partnership property. It was set to expire after ten days (excluding weekend days and holidays). On June 2, Comerica filed a motion to dissolve the restraining order. On June 7, though, Cardinal filed an unopposed motion to extend the temporary restraining order, which the court granted on June 9 ("the June 9 order"). The court held no hearing and gave no notice to parties prior to the June 9 order. The extension was to last until June 23.

During the pendency of the temporary restraining order, the parties undertook negotiations to reach a settlement. On May 31, Cardinal attempted to address the court's concerns with the adequacy of the class by amending its complaint. Cardinal named Buckeye, AmeriFirst, Crossland Savings ("Crossland"), Comerica Bank ("Comerica"), Crown Savings Association ("Crown"), Florida Federal Savings Bank ("Florida Federal"), and Mutual as representatives of a narrower class than that propounded in the complaint, a class of all mortgagees and secured lenders of the partnerships.

On June 2, Cardinal met with six of seven defendants it named in the amended complaint to discuss a possible settlement. Cardinal drafted proposed settlement papers and distributed them to all named defendants on June 4.[1] On Monday, June 5, the defendants discussed the proposed terms and agreed to meet with Cardinal's attorneys the next day. Midland felt that such discussions were improper and withdrew from the negotiations. AmeriFirst's counsel spoke against settlement by telephone at the June 5 conference and did not participate at later negotiations.

On June 6, Cardinal met with the five remaining defendants to continue settlement talks. After the day's session, Comerica withdrew from the negotiations.[2] The four remaining defendants, Buckeye, Crossland, Crown, and Florida Federal, reached a compromise on the evening of June 7.[3] The non-settling defendants refused to participate in it. On June 8, lawyers for Cardinal and two of the settling defendants filed the settlement papers, see supra note 1, with the court. These attorneys gave the court a copy of the papers, summarized the contents of the papers, and asked the judge to sign an order ("the June 8 order") temporarily certifying a defen-

---

1. The settlement papers consisted of a proposed Settlement Agreement, a scheduling order which the judge signed on June 8, a proposed form of notice to be sent to putative class members, and a proposed final order and injunction.

2. The Court will refer to Midland, AmeriFirst, and Comerica as "the non-settling defendants."

3. The Court will refer to these defendants as "settling defendants."

dant class and setting the date for a settlement hearing on June 19. The order also provided for notice to putative class members and incorporated by reference an alternative schedule to be followed if the court or the district court were to reject the settlement terms.

Midland filed this petition for a writ of mandamus and/or prohibition on June 15, 1989, seeking review of the June 8 and June 9 orders. On June 19, the Court granted temporary relief to Midland by enjoining Judge Sellers from conducting the settlement hearing scheduled for June 19. On June 20, the Court held an evidentiary hearing at which it heard testimony concerning certain allegations which Midland now lodges against Judge Sellers and the harm purportedly stemming from the June 8 and 9 orders.

Midland believes that Judge Sellers entered into a collusive scheme with Cardinal and the settling defendants to reach a compromise in the case to the detriment of other putative class members. Judge Sellers, it contends, engaged in *ex parte* contact with these parties pursuant to the scheme. This scheme and *ex parte* contact tainted the June 8 and 9 orders. Accordingly, Midland maintains that the Judge's misconduct warrants the Court's intervention to set the two orders aside.

It also argues that the June 8 and 9 orders deprive it of due process because the Judge signed them without notice or hearing. Midland states that if given an opportunity to be heard, it would have argued vigorously against extending the restraining order and certifying the class. Finally, it argues that the orders are clearly erroneous and the irreparable harm that they cause is so great that this Court must dissolve them. It notes that the lengthy course of appeal would not provide it an adequate remedy.

Cardinal denies any impropriety on the part of Judge Sellers. It claims that she did not undertake *ex parte* discussions of the case, nor is there any evidence of a collusive scheme among the settling parties and the judge to compromise the case to the detriment of class members who were not present. It claims that Midland had actual notice of the June 8 order, having participated in settlement negotiations at which the proposed order, among other papers, *see supra* note 1, was exhibited and discussed. Finally, it contends that notice of the May 25 temporary restraining order was adequate for the June 9 extension.

Having received evidence in this matter and having considered the thorough briefs filed by each interested party, the Court now considers the petition for the writ of mandamus and/or prohibition filed by Midland. The Court will consider first whether Midland can seek mandamus relief, despite possible alternative means for relief. The Court will then determine whether Midland is entitled to relief, given the facts in this case.

### I.

■ In general, the remedy of mandamus [4] is an extreme one, to be used only in

4. Mandamus had its origin in England in the control assumed by the King's judges over the autonomous organs of local government, usually to remedy the loss of some position or office. By the time of Blackstone the writ was in wide use in these areas and in the supervision by the Court of King's Bench over inferior courts, usually in matters more akin to judicial administration than to judicial review. In these circumstances, therefore, no difficulty arose in requiring a judge to make return to the application for the writ.

In the United States the use of mandamus has continually expanded. It was early given a statutory basis by the All Writs Act, which now authorizes the courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the us-

ages and principles of law." Under the statute the "traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise authority when it is its duty to do so." It was accordingly said to be limited to cases where no discretion was involved. Its modern use has been extended to include cases of clear abuse of discretion, as well as the "supervisory control of the District Courts by the Courts of Appeals [which] is necessary to proper judicial administration in the federal system."

*Rapp v. Van Dusen*, 350 F.2d 806, 811–12 (3d Cir.1965) (footnotes omitted).

extraordinary situations. *Kerr v. United States District Court*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976). It is available only when no other adequate means of relief is available. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980). "Only exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy." *Id.* Moreover, petitions for writs of mandamus or prohibition "may not be used in the federal courts as a substitute for readily available appeal procedure." *National City Bank v. Battisti*, 581 F.2d 565, 568–69 (6th Cir.1977) (citing *Will v. United States*, 389 U.S. 90, 97, 88 S.Ct. 269, 274, 19 L.Ed.2d 305 (1967); *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 30–31, 63 S.Ct. 938, 943–44, 87 L.Ed. 1185 (1943); *United States v. United States District Court*, 444 F.2d 651, 655 (6th Cir.1971), *aff'd*, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972)); *see In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 304 (6th Cir.1984). "It is, of course, the general rule that mandamus may not be substituted for appeal." *National City Bank*, 581 F.2d at 569 (quoting *Roche*, 444 F.2d at 655).

■ Given the somewhat narrow circumstances under which mandamus is available, the first threshold issue before the Court is whether the right of Midland to file a notice of appeal and a motion for leave to appeal entails that mandamus is *per se* unavailable to Midland. The Court holds that it is not.

To argue that Midland has available to it the remedy of appeal would be to oversimplify the matter, especially given Cardinal's argument that the orders are interlocutory and unappealable. Perhaps the bare, formal right to file a notice of appeal and motion for leave to appeal is a sufficient remedy, precluding the necessity of a petition for a writ of mandamus. Such a remedy, though, would be hollow indeed if Cardinal is correct that the orders are interlocutory and an appeal is inappropriate.

Leaving Midland the remedy of the right to file an appeal may very well bar any true substantive relief for it.

The Court declines to adopt such a position. Mandamus may be necessary in some circumstances to correct abuses by lower court judges. Assuming the orders to be unreviewable interlocutory ones, the absence of mandamus would allow some corruptions to remain unchecked. The Court, then, holds that the right to file a notice of appeal and a motion for leave to appeal is not itself a sufficient remedy which would preclude mandamus review.

### II.

Having held that mandamus is not *per se* unavailable to litigants simply due to the existence of the right to file a notice of appeal and a motion for leave to appeal, the second threshold issue is whether, under the facts of this case, Midland has available to it a remedy which it could have asserted instead of mandamus. Certainly appeal is the prime candidate. Accordingly, the Court begins its inquiry by determining whether the orders issued by Judge Sellers on June 8 and 9 are appealable.

■ The statute granting the Court jurisdiction to hear appeals provides "The district courts ... shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges." 28 U.S.C. § 158(a) (Supp IV.1986). Accordingly, the Court must consider first whether the two orders are "final." If the June 8 and 9 orders were "final" decisions, Midland would have the right to appeal and this Court would be required to entertain it. *In re Sun Valley Foods Co.*, 801 F.2d 186, 189 (6th Cir.1986).

For civil litigation in general, a final decision is one which "ends the litigation on its merits and leaves nothing for the court to do but execute the judgment." *Id.* (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)).[5] The standards of finality in bankruptcy

---

5. *See, e.g.,* 1 G. Ayers, R. Broude, T. Gerwitz, D. Lynn, H. Sommer & B. Zaretsky, *Collier on* *Bankruptcy* ¶ 3.03, at 3–172 (15th ed.1988) [hereinafter "1 *Collier on Bankruptcy*"].

cases, however, are laxer than those in other civil contexts. Given the unique cumulative nature of discrete "units of litigation" in bankruptcy, courts are willing to treat as "final," those orders which dispose of individual units. *E.g., In re Saco Local Dev. Corp.,* 711 F.2d 441, 443–46 (1st Cir. 1983). An interlocutory order is, by contrast, one "which does not finally determine a cause of action but only decides some intervening matter pertaining to the cause, and which requires some further steps to be taken in order to enable the court to adjudicate the cause on the merits." 1 *Collier on Bankruptcy, supra* note 5, ¶ 3.03, at 3–181.

The orders presented here are not "final." The June 8 order, for instance, is not "final" because it does not adjudicate a claim or an aspect of the merits of the adversary proceeding. Nor does the order even provide a formal, somewhat permanent decision on the class certification issue, which would necessarily be provisional anyway, Fed.R.Civ.P. 23(c)(1). Instead, it postpones final determination until the Settlement Hearing or a class certification hearing. Accordingly, the June 8 order did not "finally determine" anything.[6]

Moreover, temporary restraining orders are not generally "final."[7] Despite the looser standard of finality under section 158 appeals, the nature of the temporary restraining order militates against expanding the concept of finality to include them.

Temporary restraining orders are of brief duration, in which even expedited appellate review would be difficult. Also, preliminary and permanent injunctions often supplant them. Furthermore, bankruptcy courts should have an adequate opportunity to receive a full presentation of the issues of fact and law and to explain their decisions.[8] These factors suggest that appellate review as of right would be inappropriate, even under section 158.

Midland argues, however, that the temporary restraining order entered on May 25 extended beyond the time limit on such orders, Fed.R.Civ.P. 65(b). The label given to an injunctive order is not controlling and when a temporary injunction exceeds the Rule 65(b) limit, an appellate court would treat it as a reviewable preliminary injunction under 28 U.S.C. § 1292(a)(1) (1982).[9] Given the Court's power under section 158, Midland argues that the Court should grant it appellate review.[10]

Temporary restraining orders must expire within ten days of issuance, although the court may grant an extension for "a like period," another ten days. Fed.R.Civ.P. 65(b). When a rule prescribes a period of time is less than eleven days, intermediate Saturdays, Sundays, and legal holidays are excluded in the computation of the time prescribed. Fed.R.Civ.P. 6(a). The day of the order itself is also excluded. *Id.*[11]

---

6. Midland argues that the June 8 order does, in fact, certify a class, but such a "class" is but a categorization of parties to whom notice will be sent for the purpose of determining whether a class can be certified and whether a possible settlement is fair. Such a class is proper and desirable, since it prevents the kind of action about which Midland complains: collusive settlements to the detriment of potential class members who have no notice of the arrangements. Instead, this temporary certification means that the protections of Rule 23(e) bar collusive settlements prior to class certification. In the event that the class is not certified, little harm is caused by a court's exercise of Rule 23(e) supervision.

7. *See, e.g.,* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2962, at 616 (1973).

8. *Id.* at 618–19 (quoting *Connell v. Dulien Steel Prods., Inc.,* 240 F.2d 414, 418 (5th Cir.1957),

cert. denied, 356 U.S. 968, 78 S.Ct. 1008, 2 L.Ed.2d 1074 (1958)).

9. 11 Wright & Miller, *supra* n. 7, § 2962, at 619–21.

10. The Court agrees that if the June 9 order were, in fact, a preliminary injunction, then 28 U.S.C. § 1292(a)(1) might be instructive in the Court's decision to exercise its discretion to hear interlocutory appeals under section 158, but section 1292 does not mandate review in this case, since appeals are governed by section 158, not section 1292.

11. Given the application of Rule 6(a) to Rule 65(b) in proceedings in the district court, since Rule 7065 applies Rule 65(b) to bankruptcy adversary proceedings, Rule 6(a) also applies in adversary proceedings.

From May 25, the initial temporary restraining order was to expire after ten days. This actual time period consists of fifteen days. When the court excluded two intermediate Saturdays, the two intermediate Sundays, and Memorial Day, the expiration date of June 9 was consistent with Rule 65(b). For purposes of the rule, then, the May 25 temporary restraining order lasted only ten days. The bankruptcy court extended the temporary restraining order from June 9 until June 23. This period of time is actually fourteen days, but excluding Saturdays and Sundays again, for the purpose of the rule the extension lasted but ten days. With the May 25 order lasting ten days and the June 9 extension lasting another ten days, the court complied with Rule 65(b) and this Court sees no grounds for treating the June 9 order as a preliminary injunction.

■ The Court concludes, then, that the June 8 and 9 orders are not "final." Accordingly, the Court need not entertain appeals from them as a matter of right. The district court does, however, have the power to entertain appeals from interlocutory orders and decrees of bankruptcy judges with leave of the district court. 28 U.S.C. § 158(a) (Supp. IV 1986); see In re Looney, 823 F.2d 788, 790 (4th Cir.1987). Such appeals "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts." 28 U.S.C. § 158(c) (Supp. IV 1986).

■ In general, a useful standard for the determination of whether a district court ought to exercise its discretion to entertain an interlocutory appeal[12] is the collateral order doctrine.[13] The doctrine may apply to interlocutory section 158(a)

appeals by analogy. Under the collateral order doctrine enunciated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), in order for Midland to gain review despite the lack of finality, the order "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment," *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978).

The collateral order doctrine here, however, would not militate in favor of an exercise of the court's discretion under section 158 to review the June 8 order. The temporary certification of a class for purposes of initiating certification proceedings[14] is not a final resolution of even the limited matter of class certification before the bankruptcy court. Moreover, although class certification itself would be of some importance, the decision to treat certain creditors as a class for purposes of sending notices has far less significance.

■ In short, the collateral order doctrine is one possible generally applicable standard for guidance in exercising the Court's discretion to hear an interlocutory appeal. Application of it would not warrant review of orders of the kind issued on June 8 and 9. Nonetheless, the allegations of impropriety lodged against Judge Sellers suggest another basis for the exercise of the Court's discretion. If a party alleges abuses such as collusion with some parties to the detriment of others, appellate review would provide a means of ferreting out abuses and checking them, if the Court finds them to exist.[15]

---

**12.** The Court does not hold now that this standard is the only applicable one.

**13.** 1 *Collier on Bankruptcy, supra* note 5, ¶ 3.03, at 3–186.

**14.** The Court is not faced with the issue of whether the collateral order doctrine applies to a formal class certification order under Rule 23(c)(1), *cf. Coopers & Lybrand*, 437 U.S. at 469, 98 S.Ct. at 2458 (decided under 28 U.S.C. § 1291 (1982)).

**15.** *See* 1 *Collier on Bankruptcy, supra* p. 9, ¶ 3.03, at 3–186 (arbitrary or capricious action warrants review); *supra* note 1 ("proper judicial administration").

Given this discretion actions which a court of appeals could only consider on mandamus can be considered by the district court under its section 158 discretion, reducing the necessity for the extreme remedy of mandamus.

Midland's allegations strike at the heart of Judge Sellers' integrity and thus would merit an exercise of this Court's discretion; if indeed the Judge conspired with parties to enter a collusive agreement to the detriment of all other creditors, Midland should not be forced to suffer a single day longer the burden of tolerating further abusive conduct on her part denying it due process. By contrast, if Judge Sellers perpetrated no harm upon Midland, then she merits quick vindication of any wrongdoing to allow a return to the orderly adjudication of the Adversary Proceeding.

Given that the facts in this case militate in favor of an exercise of appellate jurisdiction, the issue becomes whether it provides an adequate substitute for mandamus, making the mandamus remedy superfluous. The Court holds that the mere fact that discretionary appellate review of interlocutory orders is indicated does not preclude mandamus relief.

Appellate courts can resolve some disputes without factual determinations simply on the record presented. In this case, for instance, an appeal could resolve the dispute concerning the adequacy of the time Judge Sellers provided for discovery of class certification issues. Her June 8 order would be part of the record and would be open for this Court to interpret and evaluate in light of the law concerning due process. The fact of her order and the procedural history would be on the record, requiring no factual findings to resolve the dispute.

For this Court to take appellate jurisdiction in light of the allegations of *ex parte* contact and collusion is another matter, though. Midland would likely prefer this Court to conduct an evidentiary hearing on the claims it has lodged than to appeal, necessitating this Court to vacate the orders and remand the cause to Judge Sellers

for a factual hearing; Midland would be in the difficult position of presenting evidence of Judge Sellers' misconduct at a hearing in which she herself is presiding.[16] The fundamental fairness of such a procedure might be in question, but this Court would not bar Midland's appeal on these grounds, if Midland were willing to undertake such a procedure on appeal.

In short, the district court's capabilities of gathering evidence of judicial misconduct are superior in the mandamus proceeding to those in appellate proceedings. Accordingly, the Court holds that Midland is not precluded from seeking review of an interlocutory bankruptcy court order simply because factual circumstances warrant appellate review under 28 U.S.C. § 158.

The final threshold question is whether Midland has available to it some other remedy besides appeal which provides an adequate substitute for the drastic remedy of mandamus. The Court is unaware of any administrative or judicial remedy available to check the abuses it alleges and bar Judge Sellers from conducting the Adversary Proceeding in the manner of which Midland accuses her. Therefore, the Court moves now to the merits of Midland's contentions on mandamus.

### III.

The Court now considers the merits of Midland's petition for mandamus. Having held that Midland is not barred from seeking relief, despite the appellate remedy which it might have pursued, the Court must now determine whether (1) Judge Sellers' improper conduct warrants dissolution of her June 8 and 9 order and (2) if no improper conduct took place, whether her June 8 and 9 orders were nonetheless so erroneous and the immediate irreparable harm, incurable by appeal, is so great, that mandamus is warranted.

---

**16.** In *Price Bros. Co. v. Philadelphia Gear Corp.,* 629 F.2d 444, 447 (6th Cir.1980), for instance, the court heard allegations that a district judge's law clerk had *ex parte* contact with a party. It remanded the case to the district court for an evidentiary hearing and report because the court of appeals had no record on which to base a judgment concerning these issues. The inade-quacy of the record necessitated a remand to the factfinder of first instance, the district court. Unfortunately, the remand has the unfortunate effect of permitting the accused district judge to preside over a factual hearing the purpose of which is to elicit evidence concerning his own impropriety.

## A. *The Alleged Misconduct of Judge Sellers*

Midland contends that Cardinal and four defendants engaged in secret negotiations which culminated in a meeting with Judge Sellers to hammer out terms and procedures for a proposed settlement. After these meetings, the Judge issued a June 8 order certifying a defendant class for notice of a settlement hearing. The order also, according to Midland, barred discovery on class certification issues, depriving it of the opportunity to gather evidence before the Settlement Hearing, which Midland could marshall in opposition of class certification at the Settlement Hearing. The next day, Midland states, the Judge entered an order without notice to it extending a temporary restraining order which Judge Sellers had issued on May 25.

Midland contends that the meeting with Cardinal and the four settling defendants constituted improper *ex parte* contact which taints both the June 8 and June 9 orders. It states that they are the product of a collusive agreement among Cardinal, the four settling defendants, and Judge Sellers and for the Judge to sign them was an arbitrary and capricious action and an abuse of discretion.

Midland also contends that the June 8 and 9 orders are *ex parte* in the sense that she issued the orders without notice to all parties and without a hearing at which the bankruptcy court could entertain testimony from interested parties. For this reason as well, the two orders violate due process, and this Court must therefore dissolve them.

Cardinal, by contrast, states that all named parties met for settlement negotiations and Midland purposefully absented itself from them. Comerica and Amerifirst also withdrew from negotiations of their own volition. Given their knowledge of the course of negotiations, Cardinal states, the meetings could hardly be termed "secretive." Midland knew of the negotiations and knew of the possibility that Judge Sellers would meet with the negotiating teams in short order to arrange proper proceedings preliminary to a settlement hearing.

Furthermore, the meeting with Judge Sellers was for the purpose of presenting a copy of the settlement papers, *see supra* note 1. Therefore, meeting with Judge Sellers was not prejudicial *ex parte* contact.

Cardinal contends, moreover, that the two orders were not *ex parte* in the sense that the Judge signed them without giving the other parties notice and an opportunity to be heard. First, the non-settling parties received actual notice of the proposal to certify a temporary class during the course of settlement negotiations. Cardinal argues that it sent copies of settlement papers, *see supra* note 1, to all seven named defendants on the evening of Sunday, June 4. One of the papers was a proposed order which contemplated the creation of a temporary class and the distribution of notices prior to a Settlement Hearing. The Judge signed this order on June 8. Midland, having received a copy of the order, was therefore on actual notice that the settling parties intended to present the order to Judge Sellers.

Second, although Judge Sellers heard no testimony concerning the extension of the temporary restraining order which it issued on June 9, Cardinal argues that the Judge's May 25 order granting the temporary restraining order provided that notice of that order would constitute notice of any extension of it which Judge Sellers might grant. Having received the May 25 order, and having argued on the motion for temporary restraining order, Cardinal argues that Midland is not in a position to claim that it was without notice of the extension issued on June 9.

### 1. *Ex Parte* Contact Between Counsel and Judge Sellers

 With regard to judicial impropriety, the issue is whether Judge Sellers engaged in *ex parte* contact with counsel for Cardinal and two settling defendants which rises to the level of a due process violation, necessitating vacation of the June 8 and 9 orders. Not all *ex parte* contact violates due process and the issue becomes whether "the *ex parte* contacts unfairly

prejudiced" one or more of the parties. *Simer v. Rios,* 661 F.2d 655, 679 (7th Cir. 1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982).

Upon consideration of the evidence presented at a factual hearing on Tuesday, June 20, the Court finds that no prejudicial *ex parte* contact between Judge Sellers and the settling parties. Cardinal admits that one of its attorneys and lawyers representing two settling defendants met with Judge Sellers, handing her a copy of the settlement papers and telling her of the gist of the settlement. The Court finds no evidence that the parties discussed the merits of the Adversary Proceeding or the fairness of the settlement. In general, the Court finds absolutely no evidence to support allegations of collusion between the Judge, Cardinal, and the settling defendants.

### 2. The Lack of Notice and Hearing

The next issue is whether the bankruptcy court's failure to issue notices to interested parties and to hold a hearing prior to the June 8 and 9 orders constituted a violation of due process. Not every *ex parte* proceeding is violative of due process. *See, e.g., Simer v. Rios,* 661 F.2d 655, 679 (7th Cir.1981). The issue is, instead, whether the non-settling defendants suffered prejudice from it. In this case, the Court finds no due process violation stemming from the want of notice and opportunity to be heard in the issuance of these orders.

■ As for the June 8 order, the Court finds no due process violation in the bankruptcy court's lack of notice and failure to hold a hearing prior to its issuance. The issue in part here is whether notice and a hearing are required before the judge can issue an order intended to generate notice that a hearing is to take place in the future. The Court holds that it is not. If every order of the bankruptcy court setting a schedule for future hearings itself required notice and a hearing, the court would be enmeshed in endless proceedings,

an infinite regression of hearings which themselves might require notice and hearings, and so on.

Other aspects of the June 8 order, however, would not elicit a similar specter of an infinite regression of notice and hearings. Specifically, the order allegedly cuts off discovery of class certification issues and bars the production of certain materials which Midland sought and arranged to receive. Moreover, the petitioner contends that the order left inadequate time to prepare for both the June 19 Settlement Hearing and the June 30 hearing. Further, the order cancelled a class certification hearing, to the termination of which Midland would have objected. Finally, Midland complains that the order did not provide the parties adequate notice of and the right to be heard in the Settlement Hearing.

The failure to give notice of and holding a hearing before the June 8 order to litigate these issues, which are of some concern, does not violate due process. For each of the issues could have been raised at the Settlement Hearing, at a motion to vacate the June 8 order, or at an appeal. *See, e.g., Simer v. Rios,* 661 F.2d 655, 679–80 (7th Cir.1981). The Court finds no evidence of prejudice given the then-impending Settlement Hearing at which Midland could have presented all of its concerns.

■ Turning to the extension of the temporary restraining order, the Court notes that the bankruptcy court held that the notice of the May 25 hearing constituted sufficient notice for any extension of it. *Cardinal Industries, Inc. v. Buckeye Federal Sav. & Loan Ass'n,* No. 2–89–0203, (Bankr.S.D. Ohio May 25, 1989). Moreover, the court heard arguments from all parties concerning the temporary restraining order. Furthermore, the parties were well aware that the May 25 order was set to expire on June 9 [17] and expected that the Judge would extend the order. Finally, Cardinal had filed with the court a motion to extend to which no party objected. Given these facts, the Court

---

**17.** Although a temporary restraining order lasts but ten days, Fed.R.Civ.P. 65, the weekend days and Memorial Day do not count in the ten day total, Fed.R.Civ.P. 6. Since May 25 itself is not counted, ten days from May 25 under the Rules would be June 9.

concludes that the non-settling defendants suffered no prejudice.

■ In short, the Court finds no grounds on the basis of *ex parte* contact, *ex parte* orders, or judicial impropriety which would justify the drastic remedy of mandamus. The evidence simply fails to show the collusion and malfeasance of which Midland accuses Judge Sellers.[18] These findings of law and fact, however, do not end the inquiry and the Court now turns to the contention that the June 8 and 9 orders are erroneous and the irreparable harm so imminent and great that mandamus is warranted.

## B. *Erroneous Rulings and Irreparable Harm*

■ Midland contends finally that the orders of June 8 and 9 are erroneous. Further, appeal would be an inadequate remedy since irreparable harm could occur before the Court could hear the merits of the matters on appeal, especially if the appeals were unreviewable interlocutory rulings. Cardinal, by contrast, argues that the rulings were correct. If Midland can show (1) that it has no adequate remedy from the orders, (2) that it might incur irreparable harm which appeal could not correct, (3) that the bankruptcy court's orders were clearly erroneous, and (4) that the order raises new and important legal issues, mandamus is warranted. *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 304 (6th Cir.1984). The Court will now consider each order in turn to determine if Midland has made the showing of the existence of the items enumerated in *Bendectin.*

### 1. The Certification of a Defendant Class

■ On June 8, Judge Sellers ordered the creation of a defendant class in the Adversary Proceeding and ordered further that class members be given notice of a settlement hearing to be held on June 19th. Midland claims that such certification was erroneous since the putative class would not satisfy the preconditions to certification, Fed.R.Civ.P. 23(a), and would not be a proper device, Fed.R.Civ.P. 23(b)(1)(B). Cardinal claims that the June 8 order certified no class. Therefore, Judge Sellers could not have erred in rulings on the requisites of class certification.

It is somewhat misleading for Cardinal to claim that the June 8 order provided for no class certification. Indeed, Judge Sellers stated that "this action shall be maintained as a class action." *Cardinal Industries, Inc. v. Buckeye Fed. Sav. & Loan Ass'n,* No. 2–89–0203, slip op. at 2 (Bankr.S.D. Ohio June 8, 1989). Nevertheless, Midland failed to note that Judge Sellers provided that the defendant class certified in the June 8 order was tentative and "solely for the purposes of the Settlement Hearing." *Id.* In fact, the court stressed that certification would be "subject to a formal ruling on class certification at the Settlement Hearing." *Id.*

The Court declines to rule on the propriety of a class action generally in the Adversary Proceeding, since the issues regarding the certification of a Rule 23(b)(1)(B) class are not before the Court. Rather, Midland's petition raises as a controversy only the temporary class certified on June 9. Midland's briefs seem to put in issue the class certification itself, which would require the Court to consider these issues *de novo* even before Judge Sellers has had a chance to consider them. Thus, the Court declines to consider such issues, but will instead confine its review to that which Judge Sellers has already held.

The Judge's certification of the temporary class was not arbitrary, capricious, or an abuse of discretion. Such temporary classes facilitate the distribution of notice

---

**18.** Given the Court's findings here, the Court must note in dictum that discretionary review by appellate consideration of the interlocutory orders would not be necessary. After hearing the merits of Midland's contentions after a factual hearing, full briefing, and oral argument, the Court notes that an exercise of discretion to hear an appeal on the same issues would serve no purpose. In short, the full and fair litigation of all issues in the mandamus proceedings here militate strongly against granting leave to appeal under the Court's discretion to hear interlocutory appeals.

to those whom the bankruptcy court might include in a class when ruling on the class certification issues at the Settlement Hearing. *In re Mid–Atlantic Toyota Antitrust Litig.*, 564 F.Supp. 1379, 1388 n. 13 (D.Md. 1983). Also, it is unnecessary for the judge to rule on the certification issues before arranging such a temporary class for the purpose of notice of a timely certification hearing. *Philadelphia Elec. Co. v. Anaconda Am. Brass Co.*, 42 F.R.D. 324 (E.D. Pa.1967).

*Philadelphia Electric* held that in a suit commenced as a class action, the class must be presumed to be proper for the purpose of Rule 23(e) prior to the court's decision on the certification issues pursuant to Rule 23(c)(1). *Id.* at 326–27. Here, treating the class as valid pending the settlement, instead of prejudicing unnamed defendants, actually protects their interests by barring collusion between Cardinal and defendants to achieve settlements detrimental to the interests of putative class members not before the court. 7B C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure* § 1797, at 347 (2d ed. 1986). If the tentative class could not be considered valid, then, the protections of Rule 23(e) could not be asserted by defendants not present.[19]

Given the valid purpose for which Judge Sellers certified the temporary class, the Court declines to hold that the June 8 order warrants dissolution by mandate of a writ of mandamus. The tentative "class" established in the June 8 order did not violate Rule 23 and until certification, the Court may not presume the June 8 Order to be erroneous.

## 2. The Temporary Restraining Order

██ The Court must now consider whether Judge Sellers erred in issuing the

extension of her May 25 temporary restraining order on June 9. Midland claims that the bankruptcy court has no jurisdiction to enjoin creditors of certain limited partnerships in which Cardinal is a general partner, because the limited partnerships themselves are not in bankruptcy. Cardinal disagrees.

In general, a temporary restraining order "is designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." 11 C. Wright and A. Miller, *Federal Practice and Procedure* § 2951, at 498 (1973). Although the party seeking the order "must demonstrate at least a reasonable probability of prevailing on the merits," *id.* at 507, the rule requires a lesser showing when the harm alleged is very great, *id.* at 508. In general, this balancing is left to the sound discretion of the court.

In reviewing the June 9 extension on the petition for mandamus, the Court finds no abuse of discretion on the part of the bankruptcy court. The harm alleged by Cardinal in case the extension were not granted was weighty. Moreover, with the complex jurisdictional issues involved, and with colorable arguments to be made on both sides of the controversy, the Court cannot say that the bankruptcy court's decision was plain error, to the extent which would justify the drastic remedy of mandamus.[20]

## IV.

Midland filed this action in an apparent attempt to disgorge the Cardinal bankruptcy from the United States Bankruptcy Court and place it in what it believes is a more favorable forum, the United States District Court. It asks this Court to utilize two unusual procedural devices, the writs of mandamus and prohibition. Such writs,

---

**19.** Given the protections of Rule 23(e), it is ironic that Midland seeks this relief. It strives to dissolve the very order which is capable of barring a collusive "sweetheart deal" between Cardinal and some of the defendants prior to the certification of the class.

**20.** The Court declines to reach the merits of the issues surrounding the assertion of the bankruptcy court's jurisdiction at this juncture given

that the Court's review is only of the bankruptcy court's exercise of discretion in issuing the temporary restraining order. For this Court to grapple with such issues, in effect it would require the Court to arrogate for itself the right to decide the preliminary injunction motion and ultimately the merits of the entire adversary proceedings in the first instance.

if issued, would stop Judge Barbara J. Sellers from continuing her administration of the Cardinal case. In effect, granting the writs would require this Court to substitute itself for Judge Sellers as the court which would decide the lawsuit.

The United States Bankruptcy Court has the resources and specialized administrative expertise to handle lawsuits of the size seen in this bankruptcy, but the United States District Court does not. Unless Midland had shown a conspiracy between Sellers, Cardinal, and the defendants attempting to settle, or had shown irreparable, massive harm from orders which were clearly erroneous, mandamus would be inappropriate. Midland has failed to make this showing. Thus, the Court cannot allow the monumental waste of the bankruptcy court's judicial resources, amassed specifically to handle suits like this, by asserting control over the case. Further, the Court will not permit the district court to be caught up in the quagmire of creditors, claims, and controversies sure to face it if it takes control of the suit.

WHEREUPON, consideration and being duly advised, the Court finds the petition of The Midland Mutual Life Insurance Company for a writ of mandamus and/or prohibition to be without merit, and it is, therefore, DENIED. This case is hereby DISMISSED in its entirety.

IT IS SO ORDERED.